UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION

| | |
|---|---|
| Miller Electric Company,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Communications Systems Inc.,<br><br>　　　　　Defendant. | Case No.: |

## COMPLAINT

Plaintiff, Miller Electric Company (hereinafter "Miller Electric"), by and through its undersigned counsel, hereby files this Complaint for Specific Performance and Breach of Contract against Defendant Communications Systems Inc. (hereinafter "CSI") (collectively "the Parties") and states as follows:

### The Parties

1. Miller Electric is a Florida corporation with its principal place of business in Jacksonville, Florida.

2. Upon information and belief, CSI is a Virginia corporation with its principal place of business in Dumfries, Virginia.

### Jurisdiction and Venue

3. Under Article 11.4 of the Subcontract Agreement (hereinafter the

"Subcontract") between Miller Electric and CSI, the Parties have agreed that Florida law shall govern any dispute relating to the subcontract. A true and correct copy of the Subcontract is attached as **Exhibit 1.**

4. Venue is proper in accordance with Article 11.4 of the Subcontract, by which the Parties agreed that Duval County, Florida would be the exclusive venue for all disputes relating to the Subcontract. **Ex. 1.**

5. The Court has subject matter jurisdiction over this matter in accordance with 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000, excluding costs, interest, and attorneys' fees, and the citizenship of the parties is completely diverse.

6. All conditions precedent to bringing this lawsuit have been performed, excused or have occurred.

## Factual Allegations

7. On April 6, 2023, Miller Electric entered into a First-Tier Subcontract Agreement (hereinafter the "First-Tier Subcontract") with CCI General Contractors, LLC (hereinafter "CCI") to perform work on the United States Marine Forces Special Operations Command (MARSOC) Operations Facility at Fort A.P. Hill, Virginia (hereinafter "the Project"). A true and correct copy of the First-Tier Subcontract is attached as **Exhibit 2**.

8. One of Miller Electric's many obligations under the First-Tier Subcontract was to maintain certified payroll, as required by federal law, and to submit certified payroll when required and/or requested by CCI for the purposes of obtaining payment from the federal government (hereinafter the "Government"). **Ex. 2.**

9. Miller Electric's certified payroll was also required to include the certified payroll of its tiered subcontractors or suppliers, such as CSI. **Ex. 2, §§ 15.1, 24.3.**

10. Accordingly, if Miller Electric failed to submit its certified payroll and that of its tiered subcontractors, then CCI was entitled to withhold payment from Miller Electric under Article 3.3.1 of the First-Tier Subcontract. **Ex. 2, §§ 3.2.1, 3.2.1.1, 3.3.1.**

11. On March 14, 2024, CSI and Miller Electric executed the Subcontract to perform work in connection with the Project. **Ex. 1.**

12. Under Article 3.2 of the Subcontract, CSI expressly agreed to be bound to Miller Electric by the terms and conditions of the First-Tier Subcontract, and to assume all of the duties, obligations, responsibilities and warranties applicable to CSI's work which Miller Electric owed to CCI under the First-Tier Subcontract. **Ex. 1, § 3.2.**

13. Thus, CSI was obligated to maintain its certified payroll and provide such information when required or requested by Miller Electric for the purposes of obtaining payment from CCI and, by extension, the Government. **Ex. 1, § 3.2.**

14. Likewise, if CSI failed to submit its certified payroll, then Miller Electric was entitled to withhold payment from CSI. **Ex. 1.**

15. The Project was substantially completed on November 5, 2024.

16. As required by federal law, CCI requested certified payroll from Miller Electric and its lower-tiered subcontractors, including CSI, to obtain final payment from the Government following the substantial completion of the Project.

17. Miller Electric, therefore, requested CSI to submit its certified payroll in accordance with the terms and conditions of the Subcontract and First-Tier Subcontract.

18. Despite Miller Electric's request, CSI failed to submit its certified payroll in violation of CSI's contractual obligations, preventing Miller Electric from fulfilling its own contractual obligations.

19. In the effort of cooperation and partnership, Miller Electric made payment on two invoices submitted by CSI, providing CSI with ample time and opportunity to collect and furnish its certified payroll.

20. However, CSI inexplicably failed to provide its certified payroll after receiving the time and opportunity to do so.

21. As a result, in an email dated December 19, 2024 (hereinafter the "December 19 Email"), Miller Electric notified CSI that its continued failure to provide certified payroll constituted a breach of contract, and Miller Electric repeated its request for certified payroll. A true and correct copy of the December 19 Email is attached as **Exhibit 3**.

22. CSI did not provide its certified payroll in response to the December 19 Email, so, in an email dated December 27 2024 (hereinafter the "December 27 Email"), Miller Electric notified CSI that it was in breach of contract, and Miller Electric was withholding any further payment to CSI. A true and correct copy of the December 27 Email is attached as **Exhibit 4**.

23. Following the December 27 Email, Miller Electric continued its diligent efforts to communicate with CSI and obtain its certified payroll, albeit to no avail.

24. On January 17, 2025, CCI sent a Notice to Cure to Miller Electric, giving Miller Electric three additional days to provide CSI's certified payroll. A true and correct copy of the Notice to Cure is attached as **Exhibit 5**.

25. In an email dated January 27, 2025 (hereinafter the "January 27 Email), Miller Electric transmitted CCI's Notice to Cure to CSI and restated its request for CSI's certified payroll. A true and correct copy of the January 27 Email is attached as **Exhibit 6**.

26. On January 28, 2025, CCI sent a Notice of Withholding to Miller Electric, informing Miller Electric of CCI's intention to withhold payment from Miller in the amount of $143,040.61 until CCI received CSI's certified payroll. A true and correct copy of the Notice of Withholding is attached as **Exhibit 7**.

27. In an email dated January 28, 2025 (hereinafter the "January 28 Email"), Miller Electric informed the president of CSI, Keith Brookes, that CSI's breach of contract directly caused the withholding of payment to Miller Electric and, by extension, CSI. A true and correct copy of the January 28 Email is attached as **Exhibit 8**.

28. Miller Electric repeated its demand for certified payroll in the January 28 Email and subsequent correspondence, with no response from CSI.

29. On February 14, 2025, undersigned counsel for Miller Electric transmitted, via U.S. Mail and Email, a letter (hereinafter the "Demand Letter") demanding CSI's participation in non-binding mediation within thirty days to resolve the certified payroll dispute. A true and correct copy of the Demand Letter

is attached as **Exhibit 9**.

30. Article 11.3 of the Subcontract states that non-binding, pre-suit mediation is a condition precedent to the filing of any action directly between the parties. **Ex. 1, § 11.3.**

31. The Demand Letter requested a reply from CSI within seven (7) days, or, if a reply was not received, Miller Electric would file suit against CSI. **Ex. 9.**

32. CSI has failed to respond to Miller Electric's demand for mediation.

33. As of the date of this filing, Miller Electric has not received CSI's payroll information, and, without CSI's certified payroll, Miller Electric is without any recourse to obtain the payment currently withheld by CCI.

## Count I – Breach of Contract

34. The allegations contained in paragraphs 1 through 33 are incorporated by reference herein.

35. As stated above, CSI was contractually obligated to furnish its certified payroll upon Miller Electric's request and the substantial completion of the Project, and CSI has failed to do so as of the date of this filing.

36. Miller Electric has been damaged in the amount of at least $143,040.61, which represents the amount of payment CCI is currently withholding from Miller

Electric as a direct result of CSI's breach of contract.

37. Under Florida law, a plaintiff may seek specific performance in an action arising from a construction contract where a defendant is contractually obligated to furnish document upon the substantial completion of construction, and a remedy at law is inadequate.

38. Upon information and belief, CSI is insolvent, and, therefore, any remedy at law would be unenforceable and inadequate.

39. CSI's failure to submit its certified payroll has damaged and continues to damage Miller Electric, as Miller Electric is unable to obtain the payment currently withheld by CCI without CSI's certified payroll.

40. Miller Electric has retained the undersigned counsel to represent it in the prosecution of this action and is obligated to pay its counsel's reasonable fees and costs. Miller Electric is entitled to an award of such costs and attorneys' fees pursuant to Article 11.4 of the Subcontract. **Ex. 1, § 11.4**.

**WHEREFORE**, Plaintiff Miller Electric Company respectfully requests that this Court enter an order for specific performance, requiring Defendant Communications System, Inc. to submit its certified payroll to the Plaintiff as well as a judgement awarding Plaintiff's attorneys' fees and costs, along with such other

and further relief as this Court deems just and proper.

Alternatively, Plaintiff Miller Electric Company respectfully requests that this Court enter a money judgment in its favor against Defendant Communications Systems, Inc. in the full amount of $143,040.61, plus any additional damages that accrue through the date of judgment, Plaintiff's attorneys' fees and costs, and interest at the legal rate from the date the judgment is entered until paid in full, along with such other and further relief as this Court deems just and proper.

February 28, 2025                                    Respectfully submitted,

                                                             /s/ Mariela Malfeld
                                                             Mariela Malfeld
Florida Bar No. 53084
Watt, Tieder, Hoffar & Fitzgerald, L.L.P.
1395 Brickell Avenue, Suite 900
Miami, Florida 33131
Telephone: 305-330-1498
Fax: 305-593-9709
mmalfeld@watttieder.com
*Attorney for Miller Electric Company*